UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIMENSIONAL
CERTIFICATION, INC.,
                        Plaintiff,

v.

AXIS MECHANICAL GROUP,
INC.,
                        Defendants.
_____ /

Case No. 22-12864

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (ECF No. 13)**

## I.      PROCEDURAL HISTORY

Plaintiff Dimensional Certification, Inc. ("Dimensional") filed this matter on or about September 29, 2022. (ECF No. 1). It was removed to the Eastern District of Michigan on November 25, 2022. (*Id.*). Defendant Axis Mechanical Group, Inc. ("Axis") filed its motion for summary judgment on December 8, 2023. (ECF No. 13). It seeks partial summary judgment on Plaintiff's breach of contract claim, and summary judgment on Plaintiff's unjust enrichment, account stated, and common law and statutory conversion claims. The motion is fully briefed. (ECF Nos. 19, 21).

## II.     BACKGROUND

Dimensional is a Michigan-based company that rents "dimensional metrology services."[1]  (ECF No. 13-2, PageID.183, 185).  Barry Gold was the president.  (ECF No. 1, PageID.59).  The company produces laser trackers, which "take . . . large measurements over large volumes" and transmits data "to a computer."  (ECF No. 13-2, PageID.182-183).  With the correct software, the computer "puts everything into an appropriate coordinate system for analysis and reporting to the customer."  (*Id.* at PageID.184).  Dimensional provides software rentals on laptops.  (*Id.* at PageID.198).  "No other software is identical to [their] Insight software."  (*Id.* at PageID.220).  Dimensional also rents coordinate measure machines ("CMM").  (*Id.* at PageID.184).

A.    Quotation #1

Axis sought to rent Dimensional's technology, and the parties negotiated their first quotation for renting "a Faro Vantage laser tracker head, MCU, cables, mandrel, optics (SMR), nests for 1.5" SMR, laptop with Insight software and tripod."  (ECF No. 1, PageID.22).  The parties decided the equipment would ship from Michigan on September 24, 2021, and that Axis would "pick up a turnkey system (including computer with Insight software) at Oakland Airport on September 26/27, perhaps returning in 3-4 weeks."  (*Id.*).  The quotation also stated:

---

[1] Metrology is "the science of measurement."  (ECF No. 13-2, PageID.183).

**Rental period:** Rental period begins on date Equipment is received by Axis Mechanical Group ("Customer") and terminates on the date of receipt of the returned Equipment in good condition by Dimensional Certification.

**Damage and Insurance:** Customer is responsible for loss or damage, regardless of cause, during the Rental Period.  Should Equipment be lost, stolen or damaged, Customer is responsible for replacement cost.  If equipment (including SMR) , cable covers or cases are returned soiled, dirty or scratched, Customer is responsible for costs of cleaning, repair or replacement.

(*Id.* at PageID.23).  The contract clarified that the rate to rent a computer with Insight software was $650.00 for one day, $3,500.00 for one week, and $12,200 for one month.  (*Id.* at PageID.24).  The shipping cost was $400.00.  (*Id.*).  The agreement had a clause which specified the contract contained "the entire understanding" and that the "Conditions set forth . . . shall govern" any "conflict between" the Terms, Conditions, and purchase order.  (*Id.* at PageID.25).

Before Dimensional rented the equipment, the only discussion about replacement cost was earlier in the year, when Gold discussed it with Tony Domelle, the Metrology Manager at Axis.  (ECF No. 13-2, PageID.226); (ECF No. 19-1, PageID.498).  Dimensional "did not elaborate on replacement cost" when issuing the quotation in September 2021.  (ECF No. 13-2, PageID.216, 226-27).  That said, according to Gold, the replacement cost "is the cost to replace an item with a product of—with alike item with similar functionality."  (*Id.* at PageID.218).

Axis received this shipment on September 27, 2021.  (ECF No. 1, PageID.38).  It was loaded into a vehicle.  (ECF No. 13-2, PageID.236).  Shortly

3

after, the vehicle was broken into, and all of the equipment, except the laser tracker head, was stolen.  (*Id.*).  Though Axis received the tracker head, it never returned it.  (*Id.* at PageID.302).

Dimensional sent an invoice for this shipment on July 29, 2022.  (ECF No. 1, PageID.38).  It stated the following:

| Line. | | |
|---|---|---|
| Description: | Rental cost for laser tracker system in Oakland, CA during 9/27/2021 – 11/15/2021 | |
| | 09/27/2021 | DCI ships equipment to Oakland, CA via Southwest Cargo – hold for pick up (Ref: AWB 526 65471991) |
| | 09/27/2021 | Axis picks up equipment at OAK airport |
| | 09/27/2021 | Rental Period starts |
| | 09/27/2021 | Axis advises equipment stolen |
| | 11/15/2021 | Payment received from Axis for stolen equipment. |
| | 11/15/2021 | Rental Period ends. |
| | 50 Days | Rental Period (September 27 – November 15, 2021) |

(*Id.*).  The rental fees from September 27, 2021 to November 15, 2021 totaled $23,350.  (*Id.*).  The shipping cost to Oakland Airport was $400.  (*Id.*).  The replacement cost for the laser tracker was $122,600.  (*Id.*).  In total, the amount due was $146,350.  (*Id.*).

Axis submitted a claim for the stolen equipment to its insurance.  (ECF No. 13-2, PageID.291).  The insurance company agreed to make a payment of $133,700, and Axis notified Dimensional of this amount.  (ECF No. 1, PageID.38). Dimensional responded and said "$133,700 covers all costs associated with the stolen equipment, including all rental fees for the stolen tracker through November 16, 2021."  (ECF No. 13-2, PageID.291).  The email also said this was "[c]ontingent only on receiving the tracker head, MCU and accessories at the

4

conclusion of the ongoing job in Oakland. . . . Rental fees for the replacement are billed separately." (*Id.* at PageID.291-292).

Axis did not return the tracker head. (*Id.* at PageID.302). Axis emailed Dimensional and said, "you're not going to receive the head for the unit you claimed on insurance . . . [it] [w]as included in your payment as replaced." (*Id.* at PageID.305). After this, Dimensional requested $12,650, which was the rent for the laser tracker and computer from November 3, 2021 to November 15, 2021. (*Id.* at PageID.295). This other cost stemmed from Dimensional "recalculat[ing] the amounts" because of the missing tracker and computer. (*Id.* at PageID.297).

B.   Quotation #2

Axis reached out to Dimensional, saying they needed replacement equipment as soon as possible. (*Id.* at PageID.236). Dimensional emailed Axis, asking it to "Replace items (except for tracker head) that were shipped on September 24, 2021," stating that "Rental fees on the Equipment . . . sent to Oakland on 9/24 continue until we receive Equipment #1 in good condition at our office in Michigan. Rental fees for Equipment . . . that may be shipped today is additive and will continue until we receive Equipment #2 in good condition at our office in Michigan." (ECF No. 1, PageID.27).

Dimensional then sent a quotation to Axis on September 27, 2021. (*Id.* at PageID.29). It contained the same rental period and damage and insurance clauses

5

as the September 24 quotation.  (*Id.* at PageID.29-30).  John Hanks of Axis signed

and dated this agreement.  (*Id.* at PageID.31).

This equipment was sent from Michigan on September 28, 2021.  (ECF No.

13-2, PageID.298).  Axis picked up the equipment.  (*Id.*).  On November 18, 2021,

when Defendant was to return the equipment, its rental car was once again broken

into and the laptop with Insight software and "[s]mall accessory items" were

stolen.  (*Id.*).  The other equipment was returned to Dimensional.  (*Id.* at

PageID.299).

Dimensional sent an invoice for rent from September 27, 2021 through

October 25, 2021, for $12,200.  (ECF No. 13-2, PageID.307).  Axis paid $12,600,

which was an excess of $400.  (ECF No. 13-2, PageID.307-308).  Then

Dimensional sent another invoice for $386.90, which Axis paid.  (ECF No. 13-2,

PageID.308).

Dimensional sent Axis another invoice.  (ECF No. 1, PageID.42). The

invoice charged $47,000 for the replacement cost for a computer with Insight

software.  (ECF No. 13-2, PageID.308).  Axis refused to pay this bill because it did

not "reflect what their view of the replacement cost . . . was."  (*Id.*).  The invoice

also charged a $10,800 rental fee for November 19, 2021 to July 28, 2020.  (ECF

No. 1, PageID.42).  The cost totaled $58,500.  (*Id.*).  Dimensional agreed to give

Axis a discount contingent on return of the equipment.  (ECF No. 13-2, PageID.301-304).

Axis declined to pay the replacement cost for the laptop.  (*Id.* at PageID.308); (ECF No. 1, PageID.42).  The remaining balance was $58,100. (ECF No. 1, PageID.43).

On August 31, 2022, Plaintiff sent an invoice to Axis for $1,457.14, the rental cost for a notebook computer with Insight software from July 29, 2022 to August 31, 2022.  (*Id.* at PageID.52).

C.    Quotation #3

The parties made another agreement on October 15, 2021.  (*Id.* at PageID.33).  Axis wanted to rent "a complete Faro laser tracker system, including computer with Insight software" in Fort Wayne, Indiana.  (*Id.* at PageID.33, 299). Once again, the agreement had the same rental period and damage and insurance clauses, and the cost breakdown was the same, though the shipping cost was valued at the original cost plus 15%.  (*Id.* at PageID.34).  Mr. Domelle signed and dated this agreement.  (*Id.* at PageID.36).  Axis received the shipment.  (ECF No. 13-2, PageID.299).  When it came time to return the equipment, the laptop had a broken hinge, and Axis shipped the equipment to Dimensional's "actual address" rather than its "shipping address."  (*Id.* at PageID.300).  Because of this, it was "stacked outside of [the] building abandoned."  (*Id.*).  Axis informed Dimensional

7

that Axis would be liable for the repair cost.  (*Id.* at PageID.305-306).

Dimensional attempted to "find a source that would repair it," but "no one was

comfortable being able to repair it." (*Id.*).  When Dimensional informed Axis that

it could not have the laptop repaired, Axis said "they would take responsibility for

the repair and [Dimensional] should send the unit" back to Axis.  (*Id.*).

Axis took the laptop to a local repair source but the source concluded that it

could not be repaired, and Axis returned the laptop to Dimensional.  (*Id.*).

Dimensional sent Axis an invoice for this equipment.  (ECF No. 1,

PageID.47).  This invoice showed a rental fee from December 8, 2021 to July 19,

2022, which totalled $9,600.  (*Id.*).  It also included the replacement cost of the

computer with Insight software, which was $50,880.  (*Id.*).  In total, the amount

due was $60,480.  (*Id.*).  Axis paid $5,400.  (*Id.*).  It refused to pay the replacement

cost.  (ECF No. 13-2, PageID.311).  The remaining amount was $55,080.  (ECF

No. 1, PageID.47).

On August 31, 2022, Plaintiff sent Axis another invoice for July 20, 2022 to

August 31, 2022.  (ECF No. 1, PageID.54).  Because it declined to pay the

replacement cost, Plaintiff continued to charge Axis monthly rent for the computer.

(ECF No. 13-2, PageID.311).  In sum, the statement of account Dimensional sent

Axis was:

**Dimensional Certification Inc.**

Statement of Account
Customer: Axis Mechanical Group
Date: August 31, 2022
Comment: This Statement of Account does not include collection fees, court costs, actual attorney's fees or any other expenses required to enforce terms and conditions.

| | | | Invoice | | | Balance | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | No. | Date | Amount | Due Date | Current | Past Due | Total | |
| Equipment received in Oakland, CA on 9/27/2021. | 9311 | 07/29/22 | $ 12,650.00 | 8/28/2022 | | $ 12,650.00 | $ 12,650.00 | |
| Equipment received in Oakland, CA on 9/28/2021. | 9312 Rev1 | 07/29/22 | $ 58,100.00 | 8/28/2022 | | $ 58,100.00 | $ 58,100.00 | |
| | 9324 | 08/31/22 | $ 1,457.14 | 9/30/2022 | $ 1,457.14 | | $ 1,457.14 | |
| Equipment received in Fort Wayne, IN on 10/16/2021 | 9313 Rev1 | 07/29/22 | $ 55,080 | 8/28/2022 | | $ 55,080.00 | $ 55,080.00 | |
| | 9325 | 08/31/22 | $ 1,842.86 | 9/30/2022 | $ 1,842.86 | | $ 1,842.86 | |
| Total | | | $129,130.00 | | $ 3,300.00 | $125,830.00 | $ 129,130.00 | |

(ECF No. 1, PageID.57). Dimensional requests $129,130.

## III. ANALYSIS

### A. Governing Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

9

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . . " *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond

10

with a showing sufficient to establish an essential element of its case. . .

.” *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

  B. <u>Breach of Contract</u>

  Plaintiff states that it made three agreements with Defendant: one, the quotation from September 27, 2021; two, the quotation from September 28, 2021; and three, the quotation from October 16, 2021.  (ECF No. 1, PageID.12).  It claims that each time, Defendant accepted the terms and provisions of the agreements by accepting the rental equipment.  (*Id.*).  That said, it claims that Defendant failed to remit payment for the balance owed, and for replacement costs associated with the stolen and damaged property.  (*Id.* at PageID.13).

  Defendant argues that it is entitled to partial summary judgment as to breach of contract because nothing in the contract from September 27, 2021 “obligates Axis to pay rental charges on equipment lost, stolen, or damaged until the desired replacement cost claimed by [Dimensional] is paid.”  (ECF No. 13, PageID.148).  In fact, as for this first contract, Defendant claims that Dimensional was “actually overpaid, because [it] received ‘rental fees’ for equipment that was stolen before it could be used.’”  (*Id.*).  It argues that the only contract term relevant to the stolen equipment is the “Damages and Insurance” term, and that there is no agreement by which Defendant agreed.  (*Id.* at PageID.149).

11

Next, Axis argues that Plaintiff "is not entitled to additional rental fees associated with the stolen and damaged laptops" in the September 28, 2021 contract or the October 16, 2021 contract. (*Id.* at PageID.150). It argues that there is a "dispute about what 'replacement cost' means" and what the sum should be associated with these two contracts. (*Id.*). In particular, it claims that there is nothing in the contract obligating Defendant to pay "ongoing rental fees" as to stolen or damaged equipment. (*Id.* at PageID.151).

Finally, Defendant claims that Plaintiff is only entitled to damages "arising naturally from the breach or those which were within the parties' contemplation at the time of contracting." (*Id.* at PageID.152) (internal citations omitted). It claims it is entitled to summary judgment on the rental fee aspect of the September 28 and October 16 quotations. (*Id.*).

In Michigan, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 830 (Mich. 2016). "[T]he damages recoverable for breach of contract are

12

those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kevin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 52-53 (Mich. 1980); *see also Lawrence v. Will Darrah & Assocs., Inc.*, 516 N.W.2d 43, 48 (Mich. 1994).

When interpreting a contract, the court "is to give effect to the parties' intention at the time they entered into the contract." *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016) (quoting *Miller-Davis Co.*, 848 N.W.2d at 102 (Mich. 2014)). The court is to "determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning." *Bank of Am., N.A.*, 878 N.W.2d at 821. This is the proper course because "the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Van Buren Charter Twp. v. Visteon Corp.*, 904 N.W.2d 192, 199 (Mich. Ct. App. 2017) (quoting *Zurich Ins. Co. v. CCR & Co.*, 576 N.W.2d 392 (Mich. Ct. App. 1997)). The court is to "avoid an interpretation that would render any portion of the contract nugatory." *Miller-Davis Co.*, 848 N.W.2d at 102. To do so, the court should "give effect to every word or phrase as far as practicable." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017) (quoting *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447 (Mich. 2003)).

"Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). "A provision is not ambiguous just because 'reasonable minds can differ regarding' the meaning of the provision." *People v. Gardner*, 753 N.W.2d 78, 85 (Mich. 2008) (quoting *Lansing Mayor v. Pub. Serv. Comm.*, 680 N.W.2d 840 (Mich. 2004)). "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer*, 892 N.W.2d at 798. An unambiguous contract is to be enforced as written because it "reflects the parties' intent as a matter of law." *In re Egbert R. Smith Tr.,* 745 N.W.2d 754 (Mich. 2008).

The terms of the three agreements state that the rental period begins on the date the equipment is received by Axis and terminates on the date of receipt of the returned equipment in good condition by Dimensional. (ECF No. 1, PageID.29). The clause states that the customer is responsible for any loss or damage during the rental period, replacement cost, costs of cleaning, repair or replacement. (*Id.*). The three contracts are unambiguous, and should be interpreted based on their actual written words.

        i.       September 27 Quotation

14

Defendant received the equipment from the first quotation and it was subsequently stolen (except for the tracker head).  (ECF No. 13-2, PageID.291).  Defendant's insurer paid one month of rental fees, plus shipping.  (ECF No. 13, PageID.149).  It claims that there "is no enforceable, contractual obligation to which [Dimensional] can point substantiating its entitlement to an additional $12,650."  (*Id.* at PageID.150).  Defendant also claims that Plaintiff admits that Axis "never agreed to send . . . the tracker head for which [it] had already been compensated" and that Axis never agreed to pay within one week.  (*Id.*).

, Defendant's arguments fail.  First, Defendant cannot point to evidence to show ambiguity in the contractual language or construction.  In lieu of this issue, this contract is interpreted with its "plain and ordinary meaning," and is "not open to judicial construction."  *Galeana Telecomm. Inv., Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711, 720 (E.D. Mich. 2016) (internal quotations omitted).  This means that the rental period began on the date Axis received the equipment and ends on return.  (ECF No. 1, PageID.23).  Though the equipment was stolen, Axis received it and had it in its possession before the theft.  Because the $12,650 is the rental fee for the period between which Axis received the equipment and sent it back, this rental fee applies as stated in the written contract.

Defendant mentions that the parties exchanged emails from November 2, 2021 to November 12, 2021 in which Axis told Dimensional that its insurance

15

provider would pay $133,700, and Dimensional agreed to take this payment.  (ECF No. 13, PageID.139).  It claims two things: one, that Dimensional accepted the $133,700 payment, and two, that Dimensional attempted to modify the contract in order to make Axis "remit payment . . . 'within one week,'" and "return the tracker head to [Dimensional] at the conclusion of the Oakland job."  (*Id.* at PageID.150). It argues that "there is no agreement 'in writing' by which Axis agreed to [these] strings DCI attempted to attach to its acceptance of the $133,700 payment."  (*Id.*). Defendant does not attach copies of these emails.  It only cites to instances in the deposition of Barry Gold when the emails are mentioned.  (ECF No. 13-2).

Next, as Defendant clarifies, the parties did not materially alter the contract through these emails.  (ECF No. 13, PageID.149).  Though "[p]arties to a contract are at liberty to modify or waive the rights and duties established by a contract," here, where there is no clear and convincing evidence that the parties mutually agreed to a modification, the terms of the original agreement have not changed. *Bank of Am., NA*, 878 N.W.2d at 830 . . . There is no evidence in the record that is convincing enough to indicate "meeting of the minds between the parties, by which they mutually assented to modify the agreement."  *Hy King Assocs., Inc. v. Versatech Mfg. Indus., Inc.*, 826 F. Supp. 231, 240 (E.D. Mich. 1993); *see also Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 461 F. Supp. 3d

531 (E.D. Mich. 2020).  As a result, there is no evidence suggesting the original contract terms were changed.

Unlike Axis's interpretation, the original contract terms did obligate Axis to pay rental charges on any lost, stolen, or damaged equipment, and it needed to return the tracker head to Dimensional at the end of the Oakland job.  The plain language of the original contract reflected this.  Axis's claim that it "never agreed to send [Dimensional] the tracker head for which [it] had already been compensated" is plain error; Axis was obliged, under the terms of the original contract, to return equipment that was not stolen.  (ECF No. 13, PageID.149). Though Axis's insurance payment compensated Dimensional, Axis's obligation to pay is not eliminated.

ii.    September 28 and October 16 Quotation

Defendant then admits that there is a genuine dispute over what "replacement cost" means in the context of the stolen or damaged equipment.  (*Id.* at PageID.150).  That said, it argues that Dimensional is not entitled to "equipment rental fees" for lost or stolen equipment.  (*Id.* at PageID.152).  As found above, Defendant has an obligation to pay rental fees until the equipment is returned.  The rental cost in case of "loss or damage," accrues "*during the Rental Period.*"  (ECF No. 1, PageID.23) (emphasis added).  There is "a contract term supporting such an obligation."  (ECF No. 13, PageID.151).

17

Defendant's attempt to read the rental and damages clauses of the contract separately fail.  As the contract is to be read on its face, "[a] reasonable, and harmonious, reading of the [contract] as a whole suggests that the two clauses take their meaning from one another." *United States v. Abbruzzese*, 552 F. Supp. 11, 13 (E.D. Mich. 1982).  This means the rental period continues even in the case of loss or damage.

The motion for summary judgment on the issue of breach of contract is denied.

> iii.   Damages

Defendant next argues Plaintiff had a duty to mitigate damages.  (ECF No. 13-2, PageID.150).  "The duty to mitigate damages prevents a party who has been wronged by a breach of contract to accumulate damages by sitting idle." *Iron Workers Loc. No. 25, Pension Fund v. Klassic Servs., Inc.*, 913 F. Supp. 541 (E.D. Mich. 1996) (internal citations omitted).  The burden of proof is on the defendant to show that the plaintiff has not used every reasonable effort in its power to minimize losses. *Lorenz Supply Co. v. American Std., Inc.*, 100 N.W.2dd 300, 335 (Mich. App. 1980).  Though Plaintiff had a duty to mitigate damages, reasonableness in general is a question of fact for the jury. *Bak v. Citizens Ins. Co. of Am.*, 199 N.W. 2d 730, 736 (Mich. App. 1993); *see also Metro Urgent Care &*

*Fam. Med. Ctr. v. State Farm Fire and Cas. Co.*, 2021 WL 6113387 (E.D. Mich. Dec. 27, 2021).

Given that whether Plaintiff mitigated damages reasonably is a question for the jury, and the agreement is not ambiguous, the motion for summary judgment on the issue of breach of contract is denied.

C.    Unjust Enrichment

Plaintiff argues that it provided rental equipment to Defendant with the understanding that Defendant would pay all charges for the equipment. (ECF No. 1, PageID.14). It claims Defendant failed/neglected to pay for the charges and Defendant has benefitted from the use of the equipment. (*Id.* at PageID.15). It maintains that it is inequitable to allow Defendant to retain the benefit of the rental equipment. (*Id.*).

In its motion for summary judgment, Axis claims it is entitled to summary judgment on the claim of unjust enrichment because an express contract covers the same subject matter.

Given that, as found above, an express contract covers the subject matter, Plaintiff "cannot recover under the theory of unjust enrichment." *Cain v. Redbox Auto. Retail, LLC*, 981 F. Supp. 674 (E.D. Mich. 2013) (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996)); *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) (a Plaintiff cannot recover

for unjust enrichment when an express contract governs the subject matter of the litigation.) (internal citations omitted).  Given that a valid contract exists, Plaintiff's unjust enrichment claim cannot survive.  The motion for summary judgment on unjust enrichment is granted.

### D.   Account Stated

Plaintiff brings a claim of account stated.  (ECF No. 1, PageID.1).  It argues that it "forwarded periodic billing statements and/or invoices to Defendant, as an account stated." (*Id.* at PageID.16).  It maintains that Defendant "failed and/or refused to pay for the charges, fees and costs incurred" and that Defendant is "indebted to Plaintiff in the sum certain amount of $129,130.00." (*Id.*).

Defendant claims that an account stated claim is invalid when "'no actions or inactions by the defendant' suggested a 'balance struck.'" (ECF No. 13, PageID.155) (internal citations omitted).  It argues that it never assented to any agreed balance, and Plaintiff does not have a valid claim of account stated.  (*Id.*).

In Plaintiff's response and in Defendant's reply, both parties argue as to the correct standard for an account stated claim, particularly the correct law under *Kaunitz v. Wheeler*, 73 N.W. 2d 263 (Mich. 1955).  (ECF Nos. 13, 19).  Plaintiff argues that a genuine issue of material fact related to an account stated occurs when a responding party files a counter-affidavit disputing the balance owed on the account.  (ECF No. 19, PageID.443).  Defendant argues that *Kaunitz* shows that an

20

account stated claim "lies only when defendant *assents* to a sum as the balance

due." (ECF No. 21, PageID.586) (emphasis original).

Under Michigan law, an account stated "is a contract based on assent to an

agreed balance, and it is an evidentiary admission by the parties of the facts

asserted in the computation and of the promise by the debtor to pay the amount

due." *Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.*, 837 N.W.2d 244, 252-

53 (Mich. 2013). In *Fisher Sand*, the Michigan Supreme Court explained the

nature of an action on an account stated as follows:

> If a claimant renders an account and it is assented to as
> correct by the other party with an express or implied
> promise to pay, an action may be maintained on the
> promise. The account stated is a new, independent cause
> of action superseding and merging the antecedent causes
> of action represented by the particular items included in
> the computation.

*Id.*

MCL § 600.2145, which covers account stated, states:

> In all actions brought in any of the courts of this state, to
> recover the amount due on an open account or upon an
> account stated, if the plaintiff or someone in his behalf
> makes an affidavit of the amount due, as near as he can
> estimate the same, over and above all legal counterclaims
> and annexes thereto a copy of said account, and cause a
> copy of said affidavit and account to be served upon the
> defendant, with a copy of the complaint filed in the cause
> or with the process by which such action is commenced,
> such affidavit shall be deemed prima facie evidence of
> such indebtedness, *unless the defendant with his answer,*
> *by himself or agent, makes an affidavit and serves a copy*
> *thereof on the plaintiff or his attorney, denying the same*.

21

(emphasis added).

Plaintiff here sent Defendant invoices and quotations.  (ECF No. 1, PageID.27, 33, 28, 42, 57).  Its final quotation, which had the requested $129,130, was an affidavit in support of its claim for the account stated.  (*Id.* at PageID.57). Defendant then offered an affidavit denying the balance.  (ECF No. 16, PageID.397).

In *Kaunitz*, the Plaintiff submitted an account stated for $29,427.10.  73 N.W. 2d 263 (1955).  The Plaintiff then moved for summary judgment for that amount.  *Id.*  Defendants opposed, filing affidavits showing questions of fact in the circumstances in which Defendant may have paid more than the amount owed or that Plaintiff had not complied with.  *Id.*  The court reversed the grant of summary judgment by the lower court because there were questions of fact around whether Defendant assented.  *Id.* at 185-86.

Here, Defendant explicitly opposed and denied the invoice for the additional $129,130.  (ECF No. 1, PageID.57).  It stated:

> If you send us an invoice for stolen laptop along with an
> invoice showing what you paid to replace it, we'll pay for
> it.  We had an agreement to settle on the first stolen Faro
> for the insurance payment that we sent you so that matter
> is closed.  The rest of the items you are asking for are
> completely unreasonable.

22

(ECF No. 16, PageID.397).  It did not assent to the amount owed, nor does it raise questions of fact about whether it assented, rather, on receipt of the invoice, and there is no debate that this response is explicitly denying the account stated.

When the "'acknowledgment or admission is qualified, and not absolute . . . there is no account stated.'"  *Berger Enter. v. Zurich Am. Ins. Co.*, 845 F. Supp. 2d 809, 822 (E.D. Mich. 2012) (internal citations omitted).  Where, as here, there is no debate about whether Defendant did not assent to the affidavit or account stated – because Defendant provides an email denying the total amount – there is no assent to form a claim of account stated.  The motion for summary judgment on the account stated claim is granted.

### E.   Conversion

Plaintiff then brings claims of conversion and statutory conversion.  (ECF No. 1, PageID.16).  It claims that Axis converted the laser tracker head from Quotation #1, the stolen laptop from Quotation #2, and the damaged laptop from Quotation #3.  (*Id.*).

Axis argues that it is not in possession of either laptop, as the laptop from Quotation #2 was stolen, and the laptop from Quotation #3 was damaged and then returned to Dimensional.  (ECF No. 13, PageID.157).  Because it does not have the objects within its control, it claims that it did not convert the items.  Finally, Axis claims that because it compensated Dimensional for the tracker head, Dimensional

23

no longer owns the tracker head, and the tracker head is no longer Dimensional's property.  (*Id.* at PageID.156).  Because of this, Axis maintains that it did not convert any equipment.  (*Id.* at PageID.156-157).

        i.    Common Law Conversion

Under Michigan common law, conversion is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 615 (E.D. Mich. 2015) (quoting *Thoma v. Tracy Motor Sales, Inc.*, 104 N.W.2d 360, 362 (Mich. 1960).  "The common law secures this right to personal property by allowing someone wrongfully deprived of his or her property to recover either that property or monetary damages, or both, for the wrongful deprivation."  *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W. 2d 136, 142 (Mich. 2015).  "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party."  *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015).  Conversion may also occur when a party "intentionally dispossess[es] another of a chattel," "intentionally destroy[s]or alter[s] a chattel in [its] possession," "us[es] a chattel in the actor's possession without authority to use it," receives or disposes of "a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire [or

24

transfer] for himself or for another a proprietary interest in it," misdelivers a chattel, or refuses to surrender a chattel on demand. *Aroma Wines*, 871 N.W. 2d, at 136, 142.

Plaintiff here claims that Axis converted the equipment from Quotation #1 and 2 because the equipment was stolen. But this equipment was neither intentionally dispossessed, destroyed, or disposed of. Nor is there evidence of improper use or use for "a purpose personal to the converter." *Id.* It was taken from Defendant upon delivery, and Defendant requested replacement equipment because it could not use what was stolen.

Though Plaintiff tries to argue that there is "a question of fact in relation to whether the property was stolen and damaged as a result of Defendant's negligence or intentional conduct," it offers no evidence to suggest intentional or negligent conduct. (ECF No. 19, PageID.447). Rather, the items were stolen on or after delivery. There is no evidence suggesting Defendant's conduct contributed to the theft. As a result, there is no evidence suggesting Defendant may have "aid[ed] in the concealment of stolen, embezzled, or converted property." (*Id.*) (citing MCL § 600.2919a(1)(b)).

Plaintiff's allegations simply state "[Axis] has wrongfully exercised dominion and control over the laser tracking equipment . . . as well as the computer and software, and has, therefore, unlawfully converted that equipment." (ECF No.

25

1, PageID.18).  Because Defendant did not contribute to the loss of the equipment, and the equipment was stolen, there is no evidence that Defendant intentionally exercised wrongful dominion or control over it.

Next, Plaintiff argues that the equipment from Quotation #3 was converted because the computer and software were returned to Plaintiff in damaged condition.  (*Id.* at PageID.17).  But no evidence suggests there was intentional destruction or harm, nor does damage necessarily imply conversion.  Axis obtained the equipment lawfully, via the contract between the parties, and sent the equipment back to Plaintiff.  Though the equipment was damaged, there is no evidence suggesting there was an intentional action leading to the damage.

Finally, Plaintiff argues that Axis's failure to pay rental fees automatically amounts to conversion.  A conversion claim may fail at law if it arises from a breach of contract.  *Miller v. Joaquin*, 431 F. Supp. 3d 906, 916 (E.D. Mich. 2019) (internal citations omitted).  In *Sudden Serv. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811 (E.D. Mich. 2008), a machine parts dealer brought claims of conversion against a forklift dealer for the dealer's refusal to pay money.  Because the parties "engaged in the sale and purchase of goods according to an express contract," the court found that the refusal to pay was a breach of the contract, and not conversion.  *Id.* at 816.  Similarly, in *Miller v. Joaquin*, the parties had a contract for sale of various collectables.  431 F. Supp. 3d at 916.  The Court found

26

that Joaquin's failure to perform duties under the contract could be compensated

only "through breach alone, and not through a tort such as conversion."  *Id.* at 906.

As a result, "no reasonable juror could find in favor of Miller for conversion."  *Id.*;

s*ee also Krause v. Stroh Brewery Co.*, 240 F. Supp. 2d 632, 636 (E.D. Mich. 2002)

(Conversion claim could not stand "because [it] does not arise out of a separate and

distinct legal duty as does the contractual obligation.").  Because Plaintiff's claim

is grounded in a contract, its conversion claim fails.

The motion for summary judgment on the issue of common law conversion

is granted.

ii.    Statutory Conversion

Michigan's conversion statute provides, in pertinent part:

> (1) A person damaged as a result of either or both of the
> following may recover 3 times the amount of actual
> damages sustained, plus costs and reasonable attorneys'
> fees:
>> (a) Another person's stealing or embezzling
>> property or converting property to the other
>> person's own use.
>>
>> (b) Another person's buying, receiving,
>> possessing, concealing, or aiding in the
>> concealment of stolen, embezzled, or converted
>> property when the person buying, receiving,
>> possessing, concealing, or aiding in the
>> concealment of stolen, embezzled, or converted
>> property knew that the property was stolen,
>> embezzled or converted.

Mich. Comp. Laws §600.2912a.

27

In order to prevail on a claim for statutory conversion, a plaintiff must satisfy the elements of a common law conversion claim, as well as demonstrate that the defendant had "actual knowledge" of the converting activity.  *See Echelon Homes, LLC v. Carter Lumber Co.*, 694 N.W.2d 544, 547-48 (Mich. 2005) (holding that under Michigan's conversion statute, "constructive knowledge is not sufficient; a defendant must know that the property was stolen, embezzled, or converted.").  Also, "simply retaining a particular item or sum does not amount to 'buying, receiving or aiding in the concealment of stolen, embezzled or converted property.'"  *Nolan v. Thomas*, 2017 WL 1132239, at *2 (E.D. Mich. Mar. 27, 2017).

Plaintiff's statutory conversion claim fails primarily because its common law conversion claim fails.  The claim also fails because no facts "show that the defendant employed the converted property for some purpose personal to the defendant's interests."  *Williams v. Ocwen Loan Servicing., LLC*, 2016 WL 5390861, at *5 (E.D. Mich. Sept. 27, 2016) (quoting *Aroma Wines*, 871 N.W.2d at 148 and *Sutter v. Ocwen Loan Servicing, LLC*, 2016 WL 3003346, at *4 (Mich. App. May 24, 2016) (Plaintiffs did not include sufficient allegations to show statutory conversion because they "did not assert that defendant employed [Plaintiff's property] for some purpose personal to defendant's interests")).  A plaintiff claiming statutory conversion must show that the conversion was for the

28

defendant's "own use." *Aroma Wines*, 871 N.W.2d at 136. "[S]omeone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.*

Finally, Plaintiff claims that Defendant damaged its property beyond repair, showing that Plaintiff had possession, custody, and control of the equipment, enjoyed the use of it, and then allowed it to be stolen or damaged. (ECF No. 19, PageID.446). It claims this shows a question of fact relative to whether the property was stolen and damaged as a result of Defendant's negligence or intentional conduct. (*Id.* at PageID.447). But, as above, there are no facts suggesting negligence or intentional conduct. The motion for summary judgment on the statutory conversion claim fails.

The motion for summary judgment is granted on the conversion, unjust enrichment, and account stated claims. It is denied on the breach of contract claim.

**IT IS SO ORDERED**.


Date: June 18, 2024                    s/Curtis Ivy, Jr.
                                       Curtis Ivy, Jr.
                                       United States Magistrate Judge

29